14-1210

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

NETTADOZ ENTERPRISES

Petitioner

v.

CINTRON BEVERAGE GROUP, LLC

Respondent.

PETITION FOR REVIEW FROM THE

TRADEMARK TRAIL AND APPEAL BOARD

IN 91200692 AND 91200807

**APPELLEE'S BRIEF**

Jeffrey Zucker
FISHER ZUCKER, LLC
21. S. 21st Street
Philadelphia, Pennsylvania 19103
Phone (215) 825-3100
Fax (215) 825-3101
E-Mail jzucker@fisherzucker.com

Attorney for Appellant

April 24, 2014

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CINTRON BEVERAGE GROUP, LLC

No. 14-1210

**CERTIFICATE OF INTEREST**

Counsel for the Appellee, Cintron Beverage Group, LLC, certifies the following:

1. The full name of every party or amicus represented by me is: **Cintron Beverage Group, LLC.**

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: **Not Applicable**.

3. All parent corporations and any publically held companies that own 10 percent or more of the stock of the part or amicus curiae represented by me are: **None.**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me at the Trademark Trial and Appeal Board are: **(1) Fisher Zucker, LLC, Jeffrey Zucker and Frank A. Reino; (2) Montgomery, McCracken, Walker & Rhoads, LLP, Evelyn H. McConathy.**

April 24, 2014                                      /s/ Jeffrey Zucker/

                                                    Jeffrey Zucker
                                                    Printed Name of Counsel

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ................................................................................i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORTIES ............................................................................... iii

STATEMENT OF RELATED CASES ...............................................................1

SUMMARY OF THE ARGUMENT ..................................................................1

ARGUMENT .......................................................................................................2

CONCLUSION ..................................................................................................10

CERTIFICATE OF SERVICE ..........................................................................11

CERTIFICATE OF COMPLIANCE.................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

Corporacion Habanos, S.A. v. Rodriguez,
  2011 WL 3871952 (TTAB 2011) ........................................................................4

Cunningham v. Laser Golf Corp.,
  222 F.3d 943 (Fed. Cir. 2000) ............................................................................3

Ecee, Inc. v. Fed. Energy Regulatory Comm'n,
  645 F.2d 339 (5th Cir. 1981) .............................................................................4

Fiat Grp. Automobiles S.p.A. v. ISM, Inc.,
  OPPOSITION 91190607, 2010 WL 956670 (Mar. 15, 2010) .............................5

Lipton Indus., Inc. v. Ralston Purina Co.,
  670 F.2d 1024 (C.C.P.A. 1982) .........................................................................3

Projects Mgmt. Co. v. Dyncorp Int'l LLC,
  734 F.3d 366 (4th Cir. 2013) .............................................................................9

Ritchie v. Simpson,
  170 F.3d 1092 (Fed. Cir. 1999) ............................................................ 3, 4, 6, 7

SmithKline Beecham Corp. v. Apotex Corp.,
  439 F.3d 1312 (Fed. Cir. 2006) .........................................................................9

Static Control Components, Inc. v. Lexmark Int'l, Inc.,
  697 F.3d 387 (6th Cir. 2012) ..........................................................................7, 8

Static Control Components, Inc. v. Lexmark Int'l, Inc.,
  2014 WL 1168967 (U.S. Mar. 25, 2014) ........................................................7, 8

United States v. Charles,
  469 F.3d 402 (5th Cir. 2006) .............................................................................9

<u>United States v. Great Am. Ins. Co. of New York</u>,
   738 F.3d 1320 (Fed. Cir. 2013) ...........................................................................8

**<u>Statutes</u>**

15 U.S.C. § 1063 ................................................................................................3, 6

15 U.S.C.A. § 1127 ..................................................................................................4

**<u>Rules</u>**

Federal Rule of Appellate Procedure 32(a)(7) ......................................................12

## STATEMENT OF RELATED CASES

1. Besides the underlying case before the Trademark and Trial Appeal Board from which this appeal is taken, this matter has not previously been before this Court or any other court.

2. There are no cases pending in this or any other court which undersigned counsel believes will directly affect or be directly affected by this Court's decision in this appeal.

## SUMMARY OF THE ARGUMENT

The TTAB correctly held that Nettadoz Enterprises ("Nettadoz") has no standing to oppose Cintron Beverage Group's ("CBG") trademark registrations because the TTAB is only empowered to determine the right to register a trademark <u>in the United States</u> and Nettadoz's claim to standing relies on harm allegedly occurring <u>only in a foreign jurisdiction</u>.

Nettadoz cites to no cases involving a foreign trademark holder in which the TTAB or a court found standing to challenge a United States trademark based solely on harm occurring outside the United States. That is because the Lanham Act only governs trademark rights in the United States, and the laws governing trademark rights in foreign countries govern trademark rights in those countries. Nettadoz cannot cite to any cases in support of its position because none exist. The proper venue for Nettadoz to challenge rights claimed by CBG is in the jurisdiction where

1

Nettadoz's rights are allegedly under attack. Nettadoz claims its rights are under attack in Nigeria, not the United States. No cases support Nettadoz's position that a foreign trademark holder has standing when the harm and interest alleged in the case exists soley outside the United States.

Nettadoz also complains the TTAB erred in finding no genuine issue of material fact in the "Statement of Issues" section of its brief. Nettadoz, however, does not argue or cite to the record or the authority it relies on for that argument in the body of its brief. As a result, Nettadoz has waived that issue.

The undisputed material facts before the TTAB concerning Nettadoz's alleged interest in the United States trademarks Nettadoz opposed are: Nettadoz (1) has not attempted to register the marks at issue in the United States; (2) has not used the marks in the United States; and (3) has no intention to use the marks in the United States. Accordingly, as a matter of law, Nettadoz does not have standing to oppose CBG's registration of the United States trademarks at issue. As a result, the TTAB's dismissal of Nettadoz's consolidated Oppositions was proper, and should be affirmed.

# ARGUMENT

**THE TTAB APPLIED THE PROPER TEST FOR STANDING AND REACHED THE CORRECT HOLDING WHEN THE TTAB RULED THAT NETTADOZ LACKED STANDING TO OPPOSE CBG'S TRADEMARK APPLICATIONS.**

### A.     Standard

A party seeking to oppose a trademark registration under 15 U.S.C. § 1063 must prove two elements, one of which is that it has standing to the oppose registration. <u>Cunningham v. Laser Golf Corp.</u>, 222 F.3d 943, 945 (Fed. Cir. 2000); <u>Lipton Indus., Inc. v. Ralston Purina Co.</u>, 670 F.2d 1024, 1026 (C.C.P.A. 1982). As the TTAB held and as will be demonstrated below, Nettadoz, as a matter of fact and law, does not have standing to oppose CBG's applications.

To establish standing to oppose a trademark registration, an opposer must demonstrate: (1) a belief that it will be damaged by the registration; and (2) a real interest in the proceeding. 15 U.S.C.A. § 1063; <u>Ritchie v. Simpson</u>, 170 F.3d 1092 (Fed. Cir. 1999).

Furthermore, the "belief of damage" must be more than a subjective belief; it must have a reasonable basis in fact, and the opposer must show facts from which a likelihood of injury stemming from the registration can be inferred. <u>Ritchie</u>, 170 F.3d at 1098. In order to demonstrate a "real interest," the opposer must have a

"direct and personal stake in the outcome of the opposition." Id. at 1095. Standing is required to prevent "mere intermeddlers" who do not raise a real controversy. Id.

> **B.    The harm complained of and the interest invoked by an opposer must have a connection to commerce in the United States in order for the TTAB to have jurisdiction over it.**

Analysis of standing before an administrative agency must always begin with the language of the statute and regulations that provide for an administrative hearing. Ecee, Inc. v. Fed. Energy Regulatory Comm'n, 645 F.2d 339, 350 (5th Cir. 1981). Section 45 of the Lanham Act explains the intent of the Lanham Act "is to regulate commerce within the control of Congress." 15 U.S.C.A. § 1127. "Commerce" is further defined by the Lanham Act as "all commerce which may lawfully be regulated by Congress." Id. As will be demonstrated below, Nettadoz is asking here to regulate commerce occurring only in foreign jurisdictions which are outside the jurisdiction of Congress, and therefore, outside the jurisdiction of the TTAB.

In its March 29, 2013 Order, the TTAB stated that it is "empowered to determine only the right to register in the United States." [A5-A6]. The TTAB went on to conclude, an opposer "must demonstrate a 'real interest' that bears some connection to the United States." Id.; citing Corporacion Habanos, S.A. v. Rodriguez, 2011 WL 3871952 (TTAB 2011) (holding that notwithstanding the Cuban embargo, Cuban plaintiff found to have standing because it allegedly advertised its goods in the United States which caused harm in the United States in

4

the form of "United States consumer deception"); Fiat Grp. Automobiles S.p.A. v. ISM, Inc., OPPOSITION 91190607, 2010 WL 956670 (Mar. 15, 2010) (foreign plaintiff that did not allege ownership or use of the mark in the United States nonetheless found to have a basis for pleading its standing based on plaintiff's Section 66(a) application in the United States that was provisionally refused in view of defendant's United States application).

In Corporacion Habanos, the TTAB held that two Cuban cigar manufacturers had standing to seek cancellation of a trademark in the United States notwithstanding the embargo that prevented them from selling their products in the United States. Corporacion Habanos, 2011 WL 3871952. In its arguments citing to Corporacion Habanos before the TTAB, Nettadoz failed to acknowledge the dispositive fact in that case. [A108-A109, A824-A825]. There was evidence in the record that the Cuban entities advertised in publications in the United States. Id. As a result, the TTAB held United States consumers were being deceived. Id. United States consumers being deceived is a harm that is occurring in the United States. Therefore, Corporacion Habanos does not support Nettadoz's argument that an alleged harm occurring outside of the United States market is enough to establish standing.

Under Nettadoz's theory argued before the TTAB, a foreign entity with no connection to the United States whatsoever, which is engaged in a trademark dispute in a foreign jurisdiction with another entity that also happens to have a United States

5

trademark registration similar to the one involved in the foreign dispute, has standing before the TTAB to challenge its competitor's United States trademark registration because the two entities are engaged in a dispute in a foreign jurisdiction. Pet.'s Br. at p. 10. [A820]. If this is true, Nettadoz's theory will permit a trademark disputes involving rights in foreign countries (as is the case here) to spread to the United States where the foreign entity does not compete, has no intention of competing and cannot point to any harm or interest involving the United States. In essence, Nettadoz is asking this Court to give a foreign entity with no interest or harm related to commerce in the United States a tool to attack a competitor's rights in the United States simply because they are engaged in a dispute in a foreign nation. Surely, this result is not the intention of Section 13 of the Lanham Act, and even if it was the drafter's intention, it would be outside the power of Congress because Congress cannot regulate trademark disputes occurring outside the United States. 15 U.S.C. § 1063.

Similar to Nettadoz's misplaced reliance on Corporacion Habanos, Nettadoz also relied heavily on Ritchie v. Simpson, 170 F.3d 1092 (Fed. Cir. 1999), for its claim to standing. In Ritchie, the opposer claimed he had standing to oppose the trademark applications filed by O.J. Simpson because the marks were offensive to a substantial composite of the public of which he is a member. Ritchie, 170 F.3d at 1098. As part of the opposer's effort to show he had standing to oppose the marks,

he alleged that he had "obtained petitions signed by people from <u>all over the United States</u> who agree with him the marks at issue are scandalous, denigrate their values, encourages spousal abuse and minimize the problem of domestic violence." <u>Id.</u>  The <u>Ritchie</u> court held Ritchie had standing as a member of the Ameircan general public that would be harmed by the registration of O.J. Simpson's marks. <u>Id.</u>

The key to the opposer's standing in <u>Ritchie</u> is that the opposer was a member of a substantial composite of the general public located in the United States, and <u>the harm was occurring within the United States</u>.  <u>Id.</u>  Nettadoz's reliance on the <u>Ritchie</u> case is misplaced because <u>Ritchie</u> had a connection to the United States unlike Nettadoz who relies solely on harms and interests allegedly occurring in Nigeria.

Nettadoz's reliance before this Court on <u>Static Control</u> is also misguided. <u>Static Control Components, Inc. v. Lexmark Int'l, Inc.</u>, 697 F.3d 387 (6th Cir. 2012) <u>cert. granted</u>, 133 S. Ct. 2766, 186 L. Ed. 2d 217 (U.S. 2013) and aff'd, 12-873, 2014 WL 1168967 (U.S. Mar. 25, 2014).  In <u>Static Control</u>, the plaintiff sold microchips to competitors of the defendant around the world and in the United States so that competitors could produce ink cartridges that would work in defendant's printers. <u>Id.</u> at 395-396.  The defendant advertised that plaintiff's products infringe on defendant's intellectual property thereby damaging plaintiff's reputation and business. <u>Id.</u> at 409.  As a result, the plaintiff sued the defendant for false advertising under the Lanham Act.  <u>Id.</u>

7

Again, and as with all cases relied on by Nettadoz in this matter, <u>Static Control</u> involved claims under the Lanham Act for false advertising where the alleged harm was <u>occurring in the United States</u>. <u>Id.</u> As the United States Supreme Court reasoned in upholding the Sixth Circuit's holding in <u>Static Control</u> that the plaintiff had standing to bring a false advertising claim under the Lanham Act, the plaintiff sued as a person engaged in "'<u>commerce within the control of Congress</u>'" whose position in the marketplace has been damaged by false advertising. <u>Lexmark Int'l, Inc.</u>, 2014 WL 1168967. Unlike the plaintiff in <u>Static Control</u>, Nettadoz is not engaged in commerce within the United States.

A trademark dispute occuring in Nigeria and the possibility of some future dispute in a foreign nation, as Nettadoz alleges here, is not commerce within the control of Congress. [A92, A99]. Only an interest connected to the United States market can be regulated by Congress, and Nettadoz admitted it has no connection to and no intention of entering the United States market. [A17, A19, A22, A809-A810]. Therefore, Nettadoz, as a matter of fact and law, does not have standing to oppose CBG's trademark registration.

**C.  Nettadoz waived its claim that the TTAB erred in finding no genuine issue of material fact because it does not cite to any authority or the record on which it relied in the body of the brief.**

"It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." <u>United States v. Great Am. Ins. Co. of</u>

New York, 738 F.3d 1320, 1328 (Fed. Cir. 2013); citing SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006); United States v. Charles, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned."). If an appellant does not support its contentions with citations to authority and the record in the body of its brief, the appellant has waived the issue. Projects Mgmt. Co. v. Dyncorp Int'l LLC, 734 F.3d 366, 376 (4th Cir. 2013).

Here, in its "Statement of the Issues" section Nettadoz asks "whether the TTAB erred in concluding that there was not a material issue of fact as to whether Nettadoz had a real interest in opposing CBG's trademark applications." Pet.'s Br. at p. 2. Nettadoz again refers to this issue in its "Summary of the Argument" section. Id. at. p. 5. Nettadoz, however, does not address this issue in the "Argument" section of its brief. As a result, Nettadoz does not cite to authority or the record on which it relies to support its claim the TTAB erred in finding no material disputed facts existed. As a result, Nettadoz has waived the issue.

If the Court, however, considers this issue, there are no disputed material facts on the issue of standing. Nettadoz: (1) has not attempted to register the marks at issue in the United States; (2) has not used the marks in the United States; and (3) has no intention to use the marks in the United States. [A17, A19, A22, A809-A810]. Furthermore, Nettadoz does not argue it incurs or expects to incur any harm in the United States and it does not argue that it has an interest in the United States market.

9

Instead, Nettadoz's argument on appeal is that there is no requirement that such harm or interest in the United States must exist. Pet.'s Br. at p. 10. Nettadoz makes this argument because it admits it has no harm or interest in the United States. Accordingly, as a matter of law, Nettadoz does not have standing to oppose the registration of the United States trademarks at issue. Therefore, the TTAB's dismissal of Nettadoz's consolidated Oppositions was proper, and should be affirmed.

## **CONCLUSION**

The TTAB was correct in holding that Nettadoz does not have standing to challenge CBG's trademark registrations. Nettadoz cannot point to any alleged harm or interest in the United States market. Instead, Nettadoz relies on an alleged harm occurring in <u>Nigeria</u> with nothing more than suspicion of similar alleged harm occurring in the future in other foreign jurisdictions.

In order to have standing to challenge a United States trademark registration, a foreign plaintiff must have a claim or interest related to the United States market because the Lanham Act only extends as far as the power of Congress to regulate commerce, and Congress does not have the power to regulate commerce occurring solely in foreign jurisdictions.

The alleged harm that Nettadoz seeks to address in the TTAB can only be addressed in the foreign jurisdiction pursuant to that jurisdiction's trademark laws.

Moreover, Nettadoz waived any claims that the TTAB erred in finding there were no genuine issues of material fact because Nettadoz did not raise or support that argument in the body of its brief with citations to the authority and record it relies on.

Accordingly, the TTAB acted appropriately by dismissing Nettadoz's opposition actions, and this Court should affirm the TTAB's holding.

Dated: April 24, 2014                          /s/   Jeffrey Zucker
                                               Jeffrey Zucker
                                               FISHER ZUCKER LLC
                                               21 S. 21st Street
                                               Philadelphia, PA 19103
                                               Phone (215) 825-3100
                                               Fax (215) 825-3101
                                               E-Mail jzucker@fisherzucker.com
                                               Attorney for Apellee

## **CERTIFICATE OF SERVICE**

I, Jeffrey Zucker, do hereby certify that a copy of Appellee's Brief is being served via e-mail to all counsel of record on this 24th day of March, 2014.

                                               /s/   Jeffrey Zucker
                                               Jeffrey Zucker
                                               FISHER ZUCKER LLC
                                               21 S. 21st Street
                                               Philadelphia, PA 19103
                                               Phone (215) 825-3100
                                               Fax (215) 825-3101
                                               E-Mail jzucker@fisherzucker.com
                                               Attorney for Apellee

## **CERTIFICATE OF COMPLIANCE**

I, Jeffrey Zucker, do hereby certify the Appellee's Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7) and in particular with the volume limitation in that the Brief contains 2542 words.

/s/ Jeffrey Zucker
Jeffrey Zucker
FISHER ZUCKER LLC
21 S. 21st Street
Philadelphia, PA 19103
Phone (215) 825-3100
Fax (215) 825-3101
E-Mail jzucker@fisherzucker.com
Attorney for Apellee